UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:16 CR 177 |
| | ) | |
| JESUS LOPEZ a/k/a Alberto Trinidad | ) | |
| Fletes Avelica | ) | |

## OPINION and ORDER

This matter is before the court on defendant Jesus Lopez's motion to withdraw his guilty plea. (DE # 145.) For the reasons that follow, Lopez's motion will be denied.

**I.   BACKGROUND**

Lopez is accused of possession with the intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (DE # 28.) Lopez is a Mexican citizen and his primary language is Spanish. During his initial appearance, an interpreter was present and Lopez was advised of his rights, the charges against him, and the possible penalties. (DE # 4.)

Lopez was initially represented by the Federal Community Defender's office. (DE ## 12-13.) In December 2016, attorney Tod Urban applied to appear *pro hac vice* on behalf of Lopez, and the court granted his request. (DE ## 18-19.) In February 2017, Urban withdrew his appearance from the case, and attorney Arlington Foley filed his appearance for Lopez. (DE ## 37, 40.) In December 2017, Urban filed a second motion to appear on behalf of Lopez, and Foley withdrew as counsel. (DE ## 81, 91.)

On May 31, 2018, while represented by Urban, Lopez entered into a plea agreement with the Government. (DE # 93.) In Paragraph 7(c)(ii) of the Plea

Agreement, Lopez agreed that the amount of drugs involved in his offense of conviction, and all relevant conduct, was 4.5 kilograms or more of "ice." (*Id.* at 4.)

On June 6, 2018, Lopez appeared before the undersigned to enter a plea of guilty. (DE # 96.) Lopez was represented by Urban, and an interpreter was present. (*Id.*) After questioning Lopez regarding his ability to speak English and Spanish, and confirming that he was not under the influence of any drugs or alcohol, the court asked Lopez whether he had discussed the possible immigration consequences of a guilty plea with his lawyer, and with the assistance of an interpreter. (DE # 133 at 4-5.) Lopez responded that they had not discussed immigration. (*Id.* at 5.) The court asked Lopez whether he understood that because he is in the United States without permission, in addition to any other possible penalties that he is facing as a result of his case, a guilty plea could subject him to deportation and prevent him from obtaining United States citizenship. (*Id.*) Lopez confirmed that he understood. (*Id.*) The court then asked:

> Q.  All right. Have you received a written copy of the charge that has been made against you in this case and have you fully discussed, with the assistance of an interpreter, that particular charge and the case, in general, with your lawyer, Mr. Urban?
>
> A.  No, I know exactly the consequences that I am facing now.

(*Id.* at 5-6.)

In light of Lopez's ambiguous response, the court ordered a recess and instructed Urban to go over the Indictment and Plea Agreement with Lopez, with the assistance of the interpreter. (*Id.* at 6.) The recess lasted six minutes. (*Id.*)

When the proceedings began again, the court asked Lopez whether he received a written copy of the charge; whether he had fully discussed with counsel, and with the

assistance of an interpreter, the charge and the case in general; and whether he was fully satisfied with his counsel and counsel's assistance. (*Id.* at 6-7.) Lopez answered "yes" to all of these questions. (*Id.*) The court asked Lopez whether he had read and fully discussed with his counsel, and with the assistance of an interpreter, the contents of the Plea Agreement before he signed it. (*Id.* at 8.) Lopez agreed that he had. (*Id.*)

Lopez also repeatedly agreed that he fully understood the contents of the Plea Agreement, that no one had made him any promises or assurances that are not contained in the Plea Agreement, and that no one had threatened him in any way to accept the Plea Agreement. (*Id.* at 8-10.) Lopez agreed that he would plead guilty of his own free will because he is, in fact, guilty of the charged crime. (*Id.*)

The court asked Lopez if he understood the terms of Paragraph 7(c), if he had read that paragraph with the assistance of an interpreter, and if he had discussed that paragraph with his lawyer. (*Id.* at 9.) Lopez agreed that he had. (*Id.*)

This court discussed the maximum penalties for the offense, and again explained the possible immigration consequences. (*Id.*) Lopez stated that he understood. (*Id.* at 11.) Lopez agreed that he and his counsel, with the assistance of an interpreter, had discussed how the advisory sentencing guidelines might apply to his case. (*Id.*) The court explained that the sentence the court ultimately imposed might be different from any estimate his lawyer or anyone else may have given him. (*Id.*) Lopez stated that he understood. (*Id.*)

The court also reviewed Lopez's appeal waiver with him, and explained that by pleading guilty, Lopez would be giving up his right to appeal any part of his

conviction and sentence on any ground other than a claim for ineffective assistance of counsel. (*Id.* at 12.) The court asked Lopez whether he fully understood, and Lopez responded, "Yes, I do understand." (*Id.*) Lopez confirmed that he had discussed giving up his right to appeal his conviction and sentence with his counsel, and with the assistance of an interpreter. (*Id.*)

Lopez also agreed that the facts recited by the Government, regarding the basis of his plea, were correct. (*Id.* at 15.) The court asked Lopez whether he had any questions about anything that had been discussed at the plea hearing. Lopez stated, "No, everything is all right. I understood everything." (*Id.* at 18.) The court asked Lopez whether he understood everything discussed during the plea hearing fully and completely, and Lopez responded that he understood. (*Id.*) At the conclusion of the plea hearing, this court accepted the plea of guilty, but deferred acceptance of the Plea Agreement until sentencing. (*Id.*)

In March 2019, Urban moved to withdraw as counsel for Lopez, citing a breakdown in the attorney-client relationship. (DE # 125.) Attorney Kerry Conner was appointed to represent Lopez. (DE # 130.)

Lopez now moves to withdraw his guilty plea. (DE # 145.) He argues that, at the time he signed the Plea Agreement and later entered the guilty plea, he did not understand the parameters of the agreement or the consequences of his plea. (*Id.* at 6.) He specifically alleges that Urban only met with him a limited number of times, and had never utilized a Spanish interpreter outside of the courtroom. (*Id.* at 5.) He alleges that all conversations between himself and Urban were in English. (*Id.*) He also claims

that he was not provided with his own copy of the Indictment or Plea Agreement, and that neither of these documents were reviewed with him with the assistance of an interpreter prior to the plea hearing. (*Id.*) According to Lopez, Urban did not discuss with him, or read to him, the provision regarding "relevant conduct" in Paragraph 7(c) during the brief recess in the change of plea hearing. (*Id.*) Lopez claims that Urban instructed him to say "yes" to the court's questions when the hearing continued. (*Id.*)

Lopez also asserts that he first learned that his proposed Guidelines sentence would be enhanced for drug quantity, role, and importation, based on "relevant conduct," when Urban reviewed the Presentence Report with him. (*Id.*) He claims that he did not know at the time of his plea hearing that he was agreeing that he was responsible for 4.5 kilograms of "ice," and he claims that he did not understand the impact that his Plea Agreement provisions would have on his advisory Guidelines sentencing range. (*Id.* at 5-6.) According to Lopez, Urban led him to believe that if he signed the Plea Agreement and entered the guilty plea, he would be going home. (*Id.* at 6.) Lopez argues that if he had been aware of the agreement to the "relevant conduct" in Paragraph 7(c), and its significance to his case, including regarding his appeal waiver, he would not have signed the Plea Agreement. (*Id.*)

II. **LEGAL STANDARD**

"A defendant has no absolute right to withdraw a guilty plea before sentencing." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015). Federal Rule of Criminal Procedure 11(d)(2)(B) states that a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if "the defendant can show a fair

5

and just reason for requesting the withdrawal." The defendant bears "a heavy burden of persuasion" in showing that a fair and just reason exists. *Collins*, 796 F.3d at 834.

The Seventh Circuit has recognized three general grounds that merit withdrawal of a guilty plea: "where the defendant shows actual innocence or legal innocence, and where the guilty plea was not knowing and voluntary." *United States v. Graf*, 827 F.3d 581, 583 (7th Cir. 2016). The colloquy required by Federal Rule of Criminal Procedure Rule 11 is designed to ensure that a defendant's guilty plea is entered knowingly and voluntarily. *See* Fed. R. Crim. P. 11(b)(1). "Once a proper Rule 11 colloquy has taken place, the 'fair and just' . . . escape hatch is narrow.'" *Collins*, 796 F.3d at 835 (quoting *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010)). Here, Lopez does not challenge the propriety of the plea colloquy, and does not allege actual or legal innocence. Rather, he argues that his plea was not knowing and voluntary.

In order to determine whether a defendant understood the nature of a charge, courts take a totality-of-the-circumstances approach and consider: "(1) the complexity of the charge; (2) the defendant's intelligence, age, and education; (3) whether the defendant was represented by counsel; (4) the district judge's inquiry during the plea hearing and the defendant's own statements; and (5) the evidence proffered by the government." *United States v. Hernandez*, 731 F.3d 666, 670 (7th Cir. 2013).

"In assessing the knowing and voluntary character of a defendant's waiver, the court should lend particular credence to the defendant's representations to the court during his plea colloquy, during which he is obligated to tell the truth." *United States v. Alcala*, 678 F.3d 574, 578-79 (7th Cir. 2012). "A plea of guilty is a formal and solemn

step. . . . A defendant's motion to withdraw is unlikely to have merit if it seeks to dispute his sworn assurances to the court." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). "The entry of a plea is not a meaningless act. When a defendant makes representations at a plea hearing, those representations are entitled to a presumption of verity. A defendant presenting a reason for withdrawal that contradicts answers he gave at the plea hearing faces an 'uphill battle.'" *Collins*, 796 F.3d at 834 (internal citations omitted).

### III.   DISCUSSION

The court has considered the totality of the circumstances and finds that Lopez has failed to establish that his plea was not knowing and voluntary. The charge against Lopez was not particularly complex, and the undersigned explained the elements of the charge during the change of plea hearing. *See Hernandez*, 731 F.3d at 670 (charges of possession and intent to distribute cocaine were "relatively straight forward"). Although Lopez has had little formal education (leaving school during the third year of junior high school), he is 42 years old, able to read and write in Spanish, and was provided with the services of an interpreter to communicate with the court and his attorneys, who represented him throughout the proceedings. (DE # 133 at 4.) Furthermore, this court conducted a thorough inquiry into Lopez's understanding of all aspects of his guilty plea. When it was not clear to this court that Lopez had fully discussed the charges with counsel, and with the assistance of an interpreter, this court stopped the proceedings and gave Lopez the opportunity to speak with Urban. Under

circumstances quite similar to this case, the Seventh Circuit found that a defendant's guilty plea was knowing and voluntary. *See Hernandez*, 731 F.3d at 671.

Lopez's present arguments directly contradict the unequivocal statements he made during his plea hearing. Lopez's primary argument in support of his position that his plea was not knowing and voluntary is that Urban did not utilize the services of a Spanish interpreter to review the Indictment and Plea Agreement with him, prior to the six-minute recess during his change of plea hearing. (DE # 145 at 7.) Thus, he argues, he did not know of the "relevant conduct" provision in Paragraph 7(c). (*Id.*) Yet, this court asked Lopez whether he read and fully discussed the contents of his Plea Agreement with his lawyer, and with the assistance of an interpreter, before he signed the Plea Agreement, and Lopez responded that he had. (DE # 133 at 8.) This court also asked Lopez whether he had read Paragraph 7(c), with the assistance of an interpreter, and discussed the paragraph with his lawyer. (*Id.* at 9.) Lopez responded that he had. (*Id.*)

Lopez cannot now take back these sworn statements. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). Here, Lopez does not present a compelling, or indeed any, explanation to excuse his present attempt to contradict the sworn statements he made during his change of plea hearing. Accordingly, he has failed to establish that his plea was not knowing and voluntary. *See United States v. Jones*, 381

F.3d 615, 619 (7th Cir. 2004) ("Jones's motion to withdraw his guilty plea directly contradicts his statements at the change of plea hearing. Other than his own self-serving assertions, his motion lacks any proof that he did not understand his guilty plea or that he was pressured into a guilty plea through false promises.").

Lopez has requested that the court hold an evidentiary hearing before ruling on his motion. Such a hearing is unnecessary. "Moving to withdraw the plea does not entitle a defendant to a hearing. If a motion is premised on defendant's untruthfulness during plea proceedings, a court may (unless the defendant has a compelling explanation) reject that motion out of hand. . . . If no substantial evidence is offered, or if the allegations advanced in support of the motion are conclusory or unreliable, the motion may be summarily denied." *Collins*, 796 F.3d at 834; *see also Jones*, 381 F.3d at 618-19. Lopez's motion is premised entirely on his own alleged untruthfulness during the plea hearing. The court does not require additional proceedings in order to determine that Lopez's motion should be denied.

## IV.   CONCLUSION

For the foregoing reasons, defendant's Motion to Withdraw Plea of Guilty (DE # 145) is **DENIED.**

                              **SO ORDERED.**

Date: June 15, 2020

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT